# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JALAINE GETHERS, | ) |
| Plaintiff, | ) ) |
| | ) Civil Action No. 15-1559 |
| v. | ) |
| | ) Judge Nora Barry Fischer |
| PNC BANK, | ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Plaintiff Jalaine Gethers' Motion Seeking Relief from Judgment Pursuant to Federal Rules of Civil Procedure 60(b)(2), 60(b)(3) and 60(d)(3) (Docket No. 93). Defendant PNC Bank filed a Response opposing Plaintiff's motion and a request for an award of attorneys' fees incurred in defending the motion, Plaintiff replied to same and Defendant filed its sur-reply brief. (Docket Nos. 97, 99, 103). On November 27, 2018, the Court held oral argument on whether Plaintiff is entitled to a hearing on her motion. (Docket No. 105). After reviewing the parties' briefs and the transcript of the oral argument, along with the declarations and documents subsequently filed by PNC, (Docket Nos. 122, 123, 124, 125), the Court finds that Plaintiff is not entitled to relief from judgment under any theory. Accordingly, Plaintiff's motion is denied, as is PNC's request for an award of attorneys' fees.

### II. Procedural and Factual Background

On December 1, 2015, Plaintiff commenced this action *pro se*, asserting claims against PNC for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964. (Docket No. 3). Plaintiff, who is African-American, alleged that PNC discriminated against her

1

by terminating her on the basis of race and retaliating against her because she lodged an internal complaint that a supervisor, Duane Fahrion, denied her a promotion because of her race. PNC moved for summary judgment with respect to both of Plaintiff's claims. (Docket Nos. 42-46).

On May 9, 2017, this Court issued a Memorandum Opinion and Order granting PNC's motion and entering judgment in favor of PNC and against Plaintiff. (Docket Nos. 64, 65). In summary, PNC Senior Employee Relations Investigator Jean Olenak found that Plaintiff processed at least nine return transactions for another employee, Rosalind Jackson, between May and July 2013 without following proper company procedures, and consequently both had violated PNC's code of ethics. (Docket No. 64 at 7). Olenak recommended to Plaintiff's direct supervisor, Amy Yates,[1] that she and Jackson be terminated, and Yates agreed. (*Id*. at 5, 9).

In granting summary judgment, the Court held that Plaintiff failed to establish a prima facie case of unlawful termination, as she cited no evidence indicating that PNC treated a similarly situated employee better than it treated her because of race. (Docket No. 64 at 22). In addition, the Court held that Plaintiff failed to establish a prima facie case of retaliation because there was no causal relationship between Plaintiff's complaint against Fahrion and her termination, or PNC's alleged resistance to her receipt of unemployment benefits, and because her contention that Fahrion was "very cold" to her did not constitute a materially adverse employment action. (*Id.* at 28-29). As the Court explained, "[e]ven assuming that Fahrion knew that [Plaintiff] complained about him . . . and then talked to her less, [she] is unable to state a prima facie retaliation claim." (*Id.* at 29). The Court also concluded as to both claims that PNC had a legitimate, non-discriminatory reason for terminating Plaintiff because she violated PNC's code of ethics by circumventing the procedures for processing Jackson's return transactions. (*Id.* at 7, 22, 30).

---

[1] From February 2010, until February 2013, Fahrion was Plaintiff's direct supervisor. (Docket No. 64 at 5). Beginning in February, 2013, Yates became Plaintiff's direct supervisor. (*Id.*).

2

On June 6, 2017, Plaintiff's current counsel entered an appearance and filed a motion for reconsideration of the Court's order granting PNC's summary judgment motion. (Docket Nos. 67, 68). Following extensive briefing and argument, the Court issued a Memorandum Opinion and Order on January 23, 2018, denying reconsideration. (Docket Nos. 89, 90). Specifically, the Court found that Plaintiff was not entitled to relief under Rule 59(e), which applied because the motion was filed within 28 days after entry of judgment, as she only sought to relitigate issues the Court already had decided. (Docket No. 89 at 17).

On February 13, 2018, Plaintiff filed an appeal of the Court's May 9, 2017 Order granting PNC's summary judgment motion and the January 23, 2018 Order denying Plaintiff's motion for reconsideration. Plaintiff filed her appellate brief on July 5, 2018, and PNC filed its response on August 30, 2018.

On September 17, 2018, Plaintiff filed the pending motion for relief from judgment with this Court, and also moved to stay the appellate proceedings pending disposition of her motion here. The Third Circuit Court of Appeals granted Plaintiff's motion to stay on September 26, 2018.

### III. <u>Plaintiff's Motion for Relief from Judgment and PNC's Response</u>

Plaintiff argues that she is entitled to relief from judgment because PNC and its counsel committed a fraud upon her and the Court in litigating and arguing its motion for summary judgment. (Docket No. 93, ¶ 2). Plaintiff alleges that PNC knowingly withheld a key page from a document and then advanced false sworn declarations so that it could argue a position based on the false statements.[2] (*Id.*). The document in question is a report written by Jodie Fine-Sheriff,

---

[2] Plaintiff obtained the document because PNC produced it to her counsel in connection with a related case brought by Rosalind Jackson against PNC as the parties prepared for trial in that case. (Docket No. 93, ¶ 3).

3

PNC's Employee Relations Investigator, concerning her investigation of Plaintiff's complaint against Fahrion. (Docket No. 93-1 at 8-13). According to Plaintiff, the last page of Fine-Sheriff's report, which previously was not produced, establishes that Fahrion's declaration stating he was unaware Plaintiff lodged a complaint about him until after she was no longer employed at PNC "appear[s] to be false," as does Fine-Sheriff's declaration stating she did not tell Fahrion that Plaintiff complained about him. (Docket No. 93, ¶¶ 37, 38, 49, 52). Plaintiff maintains that PNC relied on Fahrion's declaration to argue throughout the summary judgment proceedings that he could not have retaliated against her because he was unaware of her complaint. (*Id.* ¶ 39). Plaintiff claims that PNC's counsel perpetuated this theory in arguing for summary judment, despite knowing that a key document had been withheld and relying on a declaration that "was probably false." (*Id.* ¶¶ 41, 47). Plaintiff further claims that PNC's counsel bolstered its position by arguing that Fine-Sheriff did not identify who complained about Fahrion, but rather discussed with him various hiring decisions he had made over a period of time, which Plaintiff now contends is false based on the previously missing page of Fine-Sheriff's report.[3] (*Id.* ¶¶ 43, 64).

PNC responds that Plaintiff has not established that she is entitled to relief from judgment under Rule 60. PNC acknowledges that it inadvertently produced an incomplete version of Fine-Sheriff's report to Plaintiff as part of its initial disclosures, but explains that this was an

---

[3] Plaintiff also argues that PNC perpetuated its "false narrative" by relying on the inaccurate declarations of Yates and Olenak that Fahrion was not involved in the decision to terminate Plaintiff. (Docket No. 93, ¶¶ 66, 67). According to Plaintiff, those declarations are contradicted by Yates' deposition testimony in Rosalind Jackson's case which Plaintiff interprets as showing that Yates did not have authority to fire employees. (*Id.* ¶¶ 69-71). As PNC explained, Yates' deposition was taken by Plaintiff's counsel in the Jackson case following a motion in limine and when only Jackson's failure to promote claim remained pending. (Docket No. 97 at 16). Yates' deposition did not relate to the termination of Jackson or Plaintiff, and she did not testify about termination decisions. (*Id*). The two-page excerpt of Yates' deposition testimony upon which Plaintiff relies confirms that Yates did not testify concerning any employee's termination, and it does not contradict the prior statements that Olenak recommended Plaintiff's termination and Yates agreed with the recommendation. (*See* Docket No. 93-1 at 14-16). Accordingly, Plaintiff's interpretation of Yates' deposition testimony does not substantiate her claim that PNC perpetuated a false narrative as she now claims, nor does it establish that she is entitled to relief from judgment under Rule 60.

unintentional oversight. (Docket No. 97 at 1-2, 8-11). PNC maintains that the additional information set forth in Fine-Sheriff's report is consistent with the declarations that PNC submitted and the arguments it advanced before this Court and the Third Circuit Court of Appeals. (*Id.* at 2, 11-14). PNC further argues that Plaintiff is not entitled to relief because the "new evidence" which she relies upon is not material and would not have changed the outcome of this case. (*Id.* at 2, 17-20).

After oral argument on whether Plaintiff is entitled to a hearing on her claim of fraud, the Court posed several inquiries to PNC which elicited the following:

- Declaration of Heather A. Pierce, Esq., dated January 17, 2019, in which Attorney Pierce explains that the hard copy file that she received from PNC's legal department relating to Plaintiff contained an incomplete and a complete version of Fine-Sheriff's report of Plaintiff's complaint about Fahrion. (Docket No. 123, ¶ 7). As part of PNC's initial disclosures, Attorney Pierce inadvertently produced to Plaintiff a copy of the incomplete report, rather than the complete report, which contained some additional information on the last page. (*Id.* ¶ 12). Attorney Pierce affirmed that she produced the document to Plaintiff in good faith, the production of the incomplete report was an unintentional oversight, and she was not aware at the time that an incomplete document had been produced. (*Id.*). Attorney Pierce further affirmed that she has "acted in good faith throughout this litigation, and the production of the incomplete investigation report to [Plaintiff] was unintentional and inadvertent." (*Id.* ¶ 16). The incomplete and complete versions of Fine-Sheriff's report are attached as Exhibits A and B to Attorney Pierce's Declaration. *See* Docket No. 123 at 6-12, 14-20.

    o The incomplete version of the report indicates that Plaintiff initiated the internal complaint on August 2, 2012, when she reported that she felt discriminated against by Fahrion, and the matter was opened and assigned to Jodie Fine-Sheriff. (Docket No. 123 at 6, 12). In the "Action History" section of the report, Fine-Sheriff wrote that she met with Plaintiff on August 6, 2012, and Plaintiff explained that she tried to discuss with Fahrion why she was not selected for a promotion. (*Id.* at 10). Plaintiff noted that all of Fahrion's new hires seem to be "young, white girls with short skirts and stiletto heels. . . . [she] isn't sure that it's racial, but she feels belittled." (*Id.*). Fine-Sheriff also summarized interviews that she conducted with other employees between August 23 and August 28, 2012, to obtain information about their various positions, the atmosphere in their department and their interactions with Fahrion. (*Id.* at 10-11).

5

- o The complete version of Fine-Sheriff's report indicates that Plaintiff initiated the internal complaint about Fahrion on August 2, 2012, and the matter was resolved and the case was closed on September 11, 2012. (Docket No. 123 at 14, 20). The "Action History" section of the report contains the same information noted above concerning Fine-Sheriff's meeting with Plaintiff and her interviews with other employees, (*id.* at 18-19), but the report also contains a final page with the following additional information:

    - On August 30, 2012, Fine-Sheriff met with Joe Belczyk, who indicated he was not involved in Fahrion's hiring/promotion decisions, but he was confident that Fahrion had business reasons for them. (Docket No. 123 at 20). Belczyk was concerned about upsetting or losing Fahrion because of potential retirements in his department. (*Id.*).

    - Fine-Sheriff's notes of September 5, 2012, state that she met with Belczyk and Fahrion, who explained that he did not select Plaintiff for a promotion because she had some challenges with professionalism, which were noted on her performance evaluations, she needed to improve her interpersonal interactions with internal and external service partners, and she failed to take certain training classes which had been established as goals on her performance evaluations. (Docket No. 123 at 20). Fahrion felt that Michelle Merz was the stronger candidate and he chose her for the position because she had strong leadership skills, an advanced degree and had demonstrated her professionalism in her interactions with Fahrion's department. (*Id.*). Fine-Sheriff's notes also state that she consulted with legal and obtained Plaintiff's training record, which showed that she did not take the classes referenced by Fahrion. (*Id.*).

    - On September 11, 2012, Fine-Sheriff wrote that she met with Plaintiff and told her that she had raised some concerns which were being addressed. (Docket No. 123 at 20). Fine-Sheriff told Plaintiff that she was not technically qualified for the position based on the job posting, but they would like to help her become a better candidate in the future. (*Id.*). Fine-Sheriff advised Plaintiff to make time to take courses for her development, which the management team would support, and to send her an updated resume so that she could help Plaintiff present herself well for internal opportunities. (*Id.*). Fine-Sheriff told Plaintiff that Fahrion would work with her on a development plan to include specific courses and other issues. (*Id.*). Finally, Fine-Sheriff wrote that she spoke with the management team and Fahrion would be taking some time out of the office. (*Id.*). Belczyk asked if Fahrion could reach out to Plaintiff regarding her development plan when he returned, which Fine-

Sheriff thought was an excellent idea. (*Id.*).

- Supplemental Declaration of Heather A. Pierce, Esq., dated February 1, 2019, in which she explained that the exhibits attached to her January 17, 2019 Declaration were created from documents contained in the hard copy files that her firm received from PNC relating to Plaintiff. (Docket No. 124, ¶ 2).

- Declaration of Jodie Fine-Sheriff dated January 31, 2019, indicating that the incomplete and complete version of her report concerning Plaintiff's complaint about Fahrion were printed from PNC's electronic system and were not the product of "cutting and pasting." (Docket No. 125, ¶ 8). The incomplete version was printed from the electronic system while Fine-Sheriff's investigation still was ongoing and the complete version was printed after her investigation was completed. (*Id.*). Fine-Sheriff entered her notes from the investigation under the Action History section of the report, and the notes cannot be changed, modified or removed after they are entered and date and time stamped. (*Id.* ¶ 10). Fine-Sheriff closed her investigation of Plaintiff's complaint on September 11, 2012, and she did not make any changes to the report after that time. (*Id.* ¶ 11).

- Notice of Correction of Record dated February 12, 2019, relative to the Court's question whether "backup" notes exist for the declarations of Fine-Sheriff and Fahrion concerning their testimony that Fine-Sheriff did not inform Fahrion that Plaintiff complained about him, but instead talked with him about several of his employment decisions. (Docket No. 118). During oral argument, the Court inquired whether Fine-Sheriff made notes about her conversation with Fahrion, and Attorney Pierce responded that they did not have notes. (*Id.* at 1). Following the Court's inquiry, PNC searched again and located Fine-Sheriff's handwritten notes from her discussion with Fahrion, (*id.* at 2), a copy of which is attached to the Notice. As the handwritten notes were difficult to decipher, the Court ordered PNC to produce a transcription of them. (Docket No. 119).

- Declaration of Jodie Fine-Sheriff dated February 19, 2019, stating that as part of the investigation, she spoke with Fahrion on August 31, 2012, and made notes of the discussion. (Docket No. 122, ¶ 3). Fine-Sheriff's handwritten notes of the discussion and a transcription of same are attached as exhibits to the Declaration. (Docket Nos. 122-1, 122-2). Fine-Sheriff's notes indicate that she discussed a variety of topics with Fahrion including:

    o whether Fahrion was involved with hiring/promotion decisions made by those who report to him;

    o the promotions and/or job responsibilities of employees Cindy Jablonski, Donna Zacharias, Mary McDonald, Amanda Saville, Michelle Lubiano-Sales, Deitra Cooper, Laura Halbedl, Keith Patterson, Nichole Lorenze, Linda Reynolds, Michelle Merz and Plaintiff; and

- o the perception that Fahrion prefers to surround himself with young, thin, attractive white women in stiletto heels, and that he treats them more favorably than other employees. (Docket No. 122-2 at 2-5).

Against this background, the Court next considers Plaintiff's allegations that PNC engaged in misconduct and fraud in litigating its summary judgment motion.

## IV. Analysis

Plaintiff asserts that PNC and its counsel engaged in an elaborate charade to convince the Court that Fahrion did not know that Plaintiff complained about him and that he was not involved in her termination. (Docket No. 99 at 1). Plaintiff claims that the final page of Fine-Sheriff's investigation report, which only came to light after PNC produced it to her counsel in related litigation, contradicts Fahrion's and Fine-Sheriff's sworn declarations and establishes that PNC's counsel has not been honest with the Court concerning the production of documents relative to Plaintiff's internal complaint. (*Id.*). Accordingly, Plaintiff submits that a hearing should be held and discovery should be permitted to determine whether PNC engaged in fraud on the Court under Rule 60(d)(3), or if it engaged in misconduct or fraud which would warrant relief from judgment under Rule 60(b)(2) or (b)(3). (Docket No. 93 at 26). The Court finds that a hearing is unnecessary, as the existing record makes clear that Plaintiff has not met her burden to obtain relief under Rule 60.

### A. Plaintiff is not entitled to relief under Rule 60(b)(2).

Federal Rule of Civil Procedure 60(b) permits a party to seek relief from a final judgment or order "under a limited set of circumstances including fraud, mistake, and newly discovered

evidence."[4] *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). The Third Circuit Court of Appeals views Rule 60(b) motions as "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (citation omitted).

In particular, Rule 60(b)(2) permits relief when "newly discovered evidence [ ], with reasonable diligence, could not have been discovered" before summary judgment was granted. Fed. R. Civ. P. 60(b)(2). Newly discovered evidence refers to "evidence of facts in existence at the time of [summary judgment] of which the aggrieved party was excusably ignorant." *Bohus*, 950 F.2d at 930 (citation omitted). A party is entitled to relief only if the newly discovered evidence is "(1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the [motion]." *Id.* (citations omitted). To obtain Rule 60(b) relief, the movant "bears a heavy burden" and must show more than the "potential significance of the new evidence." *Id.* (citations omitted).

Plaintiff has not met her heavy burden to show that she is entitled to relief under Rule 60(b)(2) because the last page of Fine-Sheriff's report is not material, as it would not have changed

---

[4] PNC is incorrect that Plaintiff's motion under Rule 60(b)(2) and 60(b)(3) is untimely. (Docket No. 97 at 7). A motion seeking relief under those Rules must be filed within one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The order granting summary judgment in favor of PNC and against Plaintiff was entered on May 9, 2017, and the order denying Plaintiff's prior motion for reconsideration which the Court construed under Rule 59(e), was entered on January 23, 2018. (Docket Nos. 65 and 90). Plaintiff filed the instant motion seeking relief from judgment on September 17, 2018. Accordingly, Plaintiff's motion is timely because the one-year time limitation for a Rule 60(b) motion begins to run when the prior motion for reconsideration is denied. *See Nat'l Passenger R.R. Corp. v. Maylie*, 910 F.2d 1181, 1183 (3d Cir. 1990) (finding motion was timely because "the correct date upon which the one-year time limitation for a Rule 60(b) motion began to run was when the motion for reconsideration was denied"); *Bethel v. McAllister Bros., Inc.*, Civ. No. 91-2032, 1994 WL 328350, at *3 (E.D. Pa. July 11, 1994) (finding Rule 60(b) motion was timely filed "because defendants' Rule 50 and Rule 59 motions, which were themselves timely filed, tolled the one year time period applicable to Rule 60(b) motions.").

the outcome of the summary judgment proceedings on her retaliation claim.[5] The Court held that Plaintiff did not establish a prima facie case of retaliation because she did not produce evidence sufficient to raise the inference that her internal complaint was the likely reason for her termination. (Docket No. 64 at 25). In that regard, the Court determined that the temporal proximity between her complaint about Fahrion and her termination, as well as PNC's alleged resistance to her receipt of unemployment benefits, was too long as a matter of law for her to show the requisite causal connection. (*Id.* at 28-29). In addition, Plaintiff's contention that Fahrion was "very cold" to her was not an adverse employment action. (*Id.* at 29). As the Court explained, "***[e]ven assuming that Fahrion knew that [Plaintiff] complained about him*** . . . and then talked less to her, [she] is unable to state a prima facie retaliation claim" because "[a] reasonable employee would not be dissuaded from complaining about suspected discrimination in the workplace if less verbal interaction with a racially biased manager would be the only result." (*Id.*) (emphasis added). The Court's decision on Plaintiff's retaliation claim was not based on evidence of what Fahrion knew. Nevertheless, the Court made clear that even if Fahrion knew about Plaintiff's complaint, she did not establish a prima face case of retaliation. Thus, even if the last page of Fine-Sheriff's report had been available to Plaintiff and means what she now claims,[6] it would not have changed the

---

[5] Plaintiff's motion focuses on her retaliation claim, and she has not alleged any newly discovered evidence relative to the Court's ruling dismissing her discriminatory discharge claim. *See* Docket No. 93, ¶¶ 35, 36 (contending that PNC developed a "false narrative" about Fahrion's knowledge of Plaintiff's complaint because "[i]f Fahrion was not aware that [she] had filed an internal discrimination complaint against him, then her ***retaliation claim*** would fail as a matter of law.") (emphasis added).

[6] The last page of Fine-Sheriff's report indicates that she discussed with Fahrion the reason another employee received a promotion and Plaintiff did not. (Docket No. 123 at 20). Contrary to Plaintiff's assertions, the document does not refute Fine-Sheriff's declaration that she did not tell Fahrion it was Plaintiff who complained. Indeed, Plaintiff's contention that the document shows Fahrion "was asked to defend and justify his selection of Merz over Gethers – not that he and Fine-Sheriff engaged in a broad discussion of all of his hires and promotions," (Docket No. 93, ¶ 64), is contradicted by Fine-Sheriff's notes of her August 31, 2012, discussion with Fahrion which indicate that she talked with him about personnel decisions involving numerous employees, not just Plaintiff. (*See* Docket No. 122, Exs. A and B).

Court's decision on Plaintiff's retaliation claim.[7]

In addition to holding that Plaintiff did not establish a prima facie retaliation claim, the Court also found that PNC had a legitimate non-discriminatory reason for terminating Plaintiff because she and Jackson violated PNC's code of ethics. (Docket No. 64 at 30). The last page of Fine-Sheriff's report and the excerpt of Yates' deposition testimony certainly would not have changed the Court's decision that summary judgment was appropriate for that additional reason. Accordingly, Plaintiff is not entitled to relief under Rule 60(b)(2).

### B. Plaintiff is not entitled to relief under Rule 60(b)(3).

Likewise, Plaintiff is not entitled to relief under Rule 60(b)(3), which provides that a party may obtain relief if the opposing party engaged in fraud, misrepresentation or misconduct. Fed. R. Civ. P. 60(b)(3). To prevail on a Rule 60(b)(3) motion, the moving party "must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983). "Failure to disclose or produce evidence requested in discovery can constitute Rule 60(b)(3) misconduct, *id.*, but the Third Circuit has "not state[d] ... that every failure to produce discovery qualifies as Rule 60(b)(3) misconduct."[8] *Floorgraphics Inc. v. News Am. Mktg. In–Store Servs., Inc.*, 434 F. App'x 109, 112 (3d Cir. 2011). "In order to sustain the burden of proving

---

[7] Likewise, Yates' deposition testimony would not have changed the Court's decision on Plaintiff's retaliation claim. The excerpt of Yates' testimony upon which Plaintiff relies does not indicate that Fahrion made the decision to terminate Plaintiff or that he retaliated against her in any way. (*See* Docket No. 93-1 at 14-16).

[8] The Third Circuit elaborated that "[w]hether there has been discovery misconduct warranting relief under Rule 60(b)(3) requires not only consideration of the request propounded, but also the response by one's adversary, and whether the moving party resorted to a motion to compel or a request for sanctions as permitted by the federal rules. Consideration of these factors informs our determination of whether a party was obligated to produce certain evidence during discovery and failed to do so." *Floorgraphics*, 434 F. App'x at 112. PNC produced the incomplete version of Fine-Sheriff's report as part of its initial disclosures, not in response to any discovery request by Plaintiff. Accordingly, the situation present in this case militates against a finding that PNC engaged in discovery misconduct pursuant to the relevant factors identified in *Floorgraphics*.

fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing." *Id.* (quoting *Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)).

Here, Plaintiff has not shown by clear and convincing evidence that PNC deliberately withheld the last page of Fine-Sheriff's report and such conduct prevented her "from fully and fairly presenting [her] case." *Stridiron*, 698 F.2d at 207. First, the Court is satisfied that PNC's initial production of an incomplete version of Fine-Sheriff's report was inadvertent and does not qualify as fraud or misconduct under Rule 60(b)(3). *See Floorgraphics*, 434 F. App'x at 112 (not every failure to produce discovery constitutes Rule 60(b)(3) misconduct). In that regard, the Court credits Attorney Pierce's declaration dated January 17, 2019, explaining that PNC's failure to produce the last page of Fine-Sheriff's report was an unintentional oversight, and she was not aware that an incomplete document had been produced as part of PNC's initial disclosures. *See supra* at 5. As PNC did not engage in fraud or misconduct, Plaintiff was not prevented from fully and fairly presenting her case, particularly in view of the fact that the missing page would not have changed the outcome of the summary judgment proceedings as discussed above.

### C. **Plaintiff has not shown a fraud on the Court under Rule 60(d)(3).**

Finally, Plaintiff is not entitled to relief under Rule 60(d), which preserves the Court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Fraud on the court is distinct from the type of fraud covered by Rule 60(b)(3), which, as discussed, includes misrepresentations or misconduct by opposing parties or counsel in a case. *See* Fed. R. Civ. P. 60(b)(3); s*ee also Hobbs v. Pennell*, Civ. No. 87–285–GMS, 2009 WL 1975452, at *3, n.2 (D. Del. July 8, 2009) (distinguishing fraud under Rule 60(b)(3) from fraud on the court under Rule 60(d)(3)).

The Supreme Court has explained that fraud on the court must involve an intentional plan

fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing." *Id.* (quoting *Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)).

Here, Plaintiff has not shown by clear and convincing evidence that PNC deliberately withheld the last page of Fine-Sheriff's report and such conduct prevented her "from fully and fairly presenting [her] case." *Stridiron*, 698 F.2d at 207. First, the Court is satisfied that PNC's initial production of an incomplete version of Fine-Sheriff's report was inadvertent and does not qualify as fraud or misconduct under Rule 60(b)(3). *See Floorgraphics*, 434 F. App'x at 112 (not every failure to produce discovery constitutes Rule 60(b)(3) misconduct). In that regard, the Court credits Attorney Pierce's declaration dated January 17, 2019, explaining that PNC's failure to produce the last page of Fine-Sheriff's report was an unintentional oversight, and she was not aware that an incomplete document had been produced as part of PNC's initial disclosures. *See supra* at 5. As PNC did not engage in fraud or misconduct, Plaintiff was not prevented from fully and fairly presenting her case, particularly in view of the fact that the missing page would not have changed the outcome of the summary judgment proceedings as discussed above.

### C. **Plaintiff has not shown a fraud on the Court under Rule 60(d)(3).**

Finally, Plaintiff is not entitled to relief under Rule 60(d), which preserves the Court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Fraud on the court is distinct from the type of fraud covered by Rule 60(b)(3), which, as discussed, includes misrepresentations or misconduct by opposing parties or counsel in a case. *See* Fed. R. Civ. P. 60(b)(3); s*ee also Hobbs v. Pennell*, Civ. No. 87–285–GMS, 2009 WL 1975452, at *3, n.2 (D. Del. July 8, 2009) (distinguishing fraud under Rule 60(b)(3) from fraud on the court under Rule 60(d)(3)).

The Supreme Court has explained that fraud on the court must involve an intentional plan

to deceive the court and also must affect the public interest in a way that fraud between individual parties does not. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246 (1944) (explaining that the harm of the fraud was so broad that it "involve[d] far more than an injury to a single litigant," but was rather "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"), overruled on other grounds, *Standard Oil Co. v. United States*, 429 U.S. 17 (1976). Accordingly, in order to prove fraud on the court, a party must show: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005). "[A] determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and [ ] it must be supported by clear, unequivocal and convincing evidence." *Id.* at 386-87 (internal quotation marks and citation omitted). Examples of the egregious misconduct which constitutes fraud on the court include bribery of a judge or jury or fabrication of evidence by counsel. *Id.* at 390.

Plaintiff has not established by clear, unequivocal and convincing evidence that PNC engaged in fraud on the court. First, PNC's counsel did not perpetrate an intentional fraud directed to the Court. As already discussed, the Court credits Attorney Pierce's explanation that PNC's failure to initially produce the last page of Fine-Sheriff's investigation report was an unintentional oversight. Although the Court finds that PNC's failure to initially disclose the complete document was inadvertent, it is worth noting that non-disclosure is not sufficient to sustain a fraud on the court claim. *See In re Am. Bus. Fin. Servs., Inc.*, 471 B.R. 354, 365 (Bankr. D. Del. May 18, 2012) (citing *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 72 (10th Cir. 2005) (holding that failure to disclose does not constitute egregious conduct necessary for a fraud on the court claim);

13

*Wilson v. Johns–Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989) ("[The mere non-disclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to fraud upon the court. . . .")). In addition, the Court was not deceived in any way because, as discussed, the last page of Fine-Sheriff's report would not have changed the Court's decision that Plaintiff failed to establish a prima facie case of retaliation or that PNC had a legitimate, non-discriminatory reason for terminating her.

In sum, Plaintiff has leveled a very serious allegation that PNC committed a fraud upon this Court by withholding a key page from a document and advancing false sworn declarations in order to argue a position based on those false statements. (Docket No. 93, ¶ 2). Despite this serious allegation, Plaintiff's position is premised on a fair amount of speculation. *See id.* ¶ 5 (asserting PNC's argument that Fahrion did not know Plaintiff complained about him "appears to be false"); ¶ 33 (stating that the previously unproduced page of Fine-Sheriff's report "suggests" that the sworn declarations contain false statements); ¶¶ 37, 38 (claiming Fahrion's averments that he did not know about Plaintiff's complaint until after she was no longer employed with PNC "appear to be false"); ¶ 47 (contending that PNC's counsel relied upon a sworn declaration that "was probably false"). Contrary to Plaintiff's speculation that the final page of Fine-Sheriff's report shows Fahrion was aware of Plaintiff's complaint and demonstrates that certain declarations they submitted were false, Fine-Sheriff's handwritten notes of her discussion with Fahrion verify that she did not inform him of the complaint, but rather discussed with him various personnel decisions involving numerous employees, not just Plaintiff. For this reason, and the others discussed herein, Plaintiff has not established by clear, unequivocal and convincing evidence that PNC engaged in an intentional plan to deceive the Court which warrants relief under Rule 60(d)(3).

D. **PNC has not established that it is entitled to attorneys' fees.**

PNC requests that the Court award attorneys' fees incurred in defending against Plaintiff's motion pursuant to 28 U.S.C. § 1927 and the Court's inherent power. (Docket No. 97 at 20-22). "[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *E.E.O.C. v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 288 (W.D. Pa. 2012) (citation omitted). In addition, "a finding of bad faith is usually required before inherent-power sanctions are ordered. . . ." *Id.* (citation omitted). Bad faith must be demonstrated by clear and convincing evidence. *Id.* at 292. PNC's request for an award of attorneys' fees is denied, as the Court finds that PNC has not shown clear and convincing evidence of bad faith by Plaintiff's counsel in litigating her motion for relief from judgment.

V.   **Conclusion**

As another District Court aptly stated, "[g]iven the importance of finality in litigation, Rule 60 allows for relief from judgments under limited circumstances and the burden to obtain such relief is high." *Advanced Multilevel Concepts, Inc. v. Bukstel*, Civ. Action No. 11-3718, 2014 WL 6907973, at *13 (E.D. Pa. Dec. 9, 2014). For the foregoing reasons, Plaintiff has not met that high burden and her motion seeking relief from judgment under Rule 60(b)(2), 60(b)(3) and 60(d)(3) is denied. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: May 22, 2019

cc/ecf: All counsel of record